# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILLIAM TAYLOR                              )
     8971 Spruce Brook Street            )
     Anchorage, AK 99507                 )
                                  )
          Plaintiff,                   )
                                    )
     v.                                   )
                                    )
MICHAEL R. POMPEO,                         )
Secretary of State                          )
U.S. Department of State                    )
2201 C Street, N.W.                         )
Washington, DC 20520,                       )
                                    )
         and                           )
                                    )
WILLIAM P. BARR,                           )
Attorney General                            )     Civil Action No. 1:19-cv-02987-CRC
U.S. Department of Justice                  )
950 Pennsylvania Avenue, N.W.               )
Washington, DC 20530,                       )
                                    )
         and                           )
                                    )
DR. MARK T. ESPER,                         )
Secretary of Defense                        )
1000 Defense Pentagon                       )
Washington, DC 20301                        )
                                    )
         and                           )
                                    )
BARBARA M. BARRETT,                        )
Secretary of the Air Force                  )
1670 Air Force Pentagon                     )
Washington, DC 20330                        )
                                    )
         Defendants.                  )

## AMENDED COMPLAINT, COMPENSATORY AND INJUNCTIVE RELIEF REQUESTED, AND JURY DEMAND

### I.    INTRODUCTION.

1.      This is an action brought pursuant to section 501 of the Rehabilitation Act, 29 U.S.C. § 791, challenging the actions of the Defendants Michael R. Pompeo, in his official capacity as Secretary of the United States, William P. Barr, in his official capacity as the Attorney General of the United States, Dr. Mark T. Esper, in his official capacity as the United States Secretary of Defense, and Barbara Barrett, in her official capacity as Secretary of the Air Force (collectively, "Defendants"), in refusing to allow Plaintiff William A. Taylor to work in the Rule of Law Program based at the U.S. Embassy compound in Kabul, Afghanistan solely because of his disability: diabetes, Type 1, insulin-dependent.

2.      As set forth below, Mr. Taylor received an offer of employment to work a one-year detail as a Senior Legal Advisor with the "Rule of Law Program" in Kabul, Afghanistan. Defendants then required Mr. Taylor to submit to a medical examination and rescinded the offer of employment because of Mr. Taylor's diabetes, despite the fact that his diabetes is excellently controlled, and he could have performed the functions of the position with or without a reasonable accommodation. Defendants' actions constitute a violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*

3.      Pursuant to the Rehabilitation Act (e.g., 29 U.S.C. § 794a), Mr. Taylor seeks reinstatement, equitable and injunctive relief, compensatory damages, non-compensatory damages, attorney's fees and costs, and such other relief as the Court deems just and appropriate to fully remedy Defendants' unlawful acts.

## II.   JURISDICTION AND VENUE.

4.      This Court has jurisdiction over this Complaint because it presents a question of federal law. 28 U.S.C. § 1331.

5.      Specifically, this Court has jurisdiction over this Complaint pursuant to the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and 42 U.S.C. § 2000e-5(f)(3).

6.      Venue is proper in the United States District Court for the District of Columbia pursuant to 42 U.S.C. § 2000e-5(f)(3), because some or all of the unlawful employment practices alleged to have been committed occurred in this District and the employment records relevant to the practices are maintained and administered in this District.

## III.   PARTIES.

7.      Plaintiff William A. Taylor is an Assistant United States Attorney and resides in Anchorage, Alaska. Mr. Taylor has type 1 diabetes which is well controlled with an insulin pump and continuous blood glucose monitor.

8.      Defendant Michael ("Mike") R. Pompeo is the Secretary of State for the United States of America and is sued in his capacity as head of a department in the executive branch of the Federal Government within the meaning of 29 U.S.C. §§ 791 and 794. Secretary Pompeo's address is 2201 C Street, N.W., Washington, DC 20520.

9.      Defendant William P. Barr is the United States Attorney General and is sued in his capacity as head of a department in the executive branch of the Federal Government within the meaning of 29 U.S.C. §§ 791 and 794. Attorney General Barr's address is 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

10.     Defendant Dr. Mark T. Esper is the United States Secretary of Defense and is sued in his capacity as head of a department in the executive branch of the Federal Government within the meaning of 29 U.S.C. §§ 791 and 794. Secretary Esper's address is 1000 Defense Pentagon, Washington, DC 20301.

11.     Defendant Barbara M. Barrett is the United States Secretary of the Air Force and is sued her capacity as head of a department in the executive branch of the Federal Government within the meaning of 29 U.S.C. §§ 791 and 794. Secretary Barrett's address is 1670 Air Force Pentagon, Washington DC 20330.

IV.     **STATEMENT OF FACTS.**

      A.     **Mr. Taylor's employment as an Assistant United States Attorney.**

12.     Mr. Taylor has worked for the United States Department of Justice since February 22, 2016, as an Assistant United States Attorney in the Criminal Division of the United States Attorney's Office for the District of Alaska.

13.     Mr. Taylor's personnel record and evaluations reflected exemplary job performance during his tenure as an Assistant United States Attorney.

14.     Mr. Taylor is assigned to the Organized Crime and Drug Enforcement Task Force ("OCDETF") unit and is the designated Organized Crime and Gang Coordinator for the district.

15.     Mr. Taylor was assigned to the some of the most complex cases prosecuted in the district including federal kidnapping, racketeering, homicide, capital case litigation, gang and organized crime prosecutions, weapons offenses, and narcotics trafficking.

**B.     Mr. Taylor's disability.**

16.     Mr. Taylor is an individual with a disability under the Rehabilitation Act and ADA because he has Type I diabetes, which substantially limits bodily functions, including the endocrine system. 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(9); 29 C.F.R. § 1630.2(g), (h), (i)(1)(ii).

17.     Mr. Taylor was diagnosed with diabetes on or about January 1991, and since that time he has managed his diabetes through insulin and blood glucose monitoring.

18.     Mr. Taylor's type 1 diabetes has not had any adverse interference on his duties with the Department of Justice. He has at all times been capable of performing the essential functions of his job.

**C.     Mr. Taylor's application to the Rule of Law Program.**

19.     On April 8, 2018, Mr. Taylor applied for a detail assignment with the Rule of Law Program as a Senior Legal Advisor at the United States Embassy in Kabul, Afghanistan.

20.     The Rule of Law Program is a prestigious program that is collaboratively administered between the Department of Justice and the Department of State.

21.     The Rule of Law Program serves to enhance the profiles and careers of Assistant United States Attorneys like Mr. Taylor. Through his selection and participation in this program, Mr. Taylor would expect greater career progression and opportunities in the future.

22.     For example, Mr. Taylor would have opportunities for other prestigious overseas placements and positions (and other domestic federal government positions) for which he would not likely be considered without working in the Rule of Law Program in Kabul.

23.     The internal job announcement for the Rule of Law Program encouraged applications from individuals with disabilities.

24.     After Mr. Taylor had completed several interviews, the Department of Justice notified Mr. Taylor on July 16, 2018, that it had selected him for the Rule of Law detail assignment.

25.     Mr. Taylor's duties with the Rule of Law Program would involve training and advising Afghan prosecutors, law enforcement, and law makers in the implementation of modern criminal justice sector capabilities.

26.     The assignment was to be for a period of 12 months, which included three rest and relaxation trips to the United States for a period of 22 days each.

27.     The rest and relaxation trips in the United States were to occur at regular intervals, approximately every twelve weeks.

28.     After receiving the offer for the position in Kabul, Afghanistan, Mr. Taylor began the pre-deployment steps which included firearms training, security clearance, obtaining a diplomatic passport, participating in an Afghanistan familiarization course and Foreign Affairs Counter Threat course, and other administrative processes.

29.     In addition, Mr. Taylor was required to undergo medical evaluation and obtain medical clearance before receiving his detail assignment to the Rule of Law Program in Kabul.

**D.     Defendants' denial of Mr. Taylor's medical clearance.**

30.     The medical clearance process for the Rule of Law Program was controlled and administered by the Department of State – Bureau of Medical Services in collaboration with the Department of Defense – United States Central Command ("USCENTCOM").

31.     The Department of State collaborates with USCENTCOM concerning medical clearances for certain applicants. In the case of Mr. Taylor, the Department of State collaborated with USCENTCOM because he would have been assigned to Afghanistan, and Afghanistan falls within USCENTCOM's "Area of Responsibility."

32.     Mr. Taylor was initially cleared to work in Kabul, Afghanistan, by two medical providers, using the medical forms provided by the Department of State. One provider specifically noted Mr. Taylor's excellent diabetes management.

33.     Mr. Taylor submitted his medical clearance paperwork to the Department of State on July 31, 2018.

34.     On August 9, 2018, and August 16, 2018, Mr. Taylor was informed by the Department of State that he would not be permitted to work at the United States Embassy in Kabul due to his type 1 diabetes, absent a waiver from USCENTCOM.

35.     On August 20, 2018, the Department of State requested a waiver from USCENTCOM to the Department of Defense's policy concerning employment of

individuals with type 1 diabetes in Afghanistan, which the Department of State interpreted as prohibiting type 1 diabetics from working in Afghanistan.

36.     Department of Defense policy requires an individualized assessment of individuals with type 1 diabetes that complies with the Rehabilitation Act but does not categorically prohibit individuals with type 1 diabetes from working in Afghanistan or Iraq.

37.     On August 28, 2018, USCENTCOM denied the Department of State's request for a medical clearance waiver on Mr. Taylor's behalf, stating that his "condition is incompatible with the expeditionary CENTCOM AOR in general and the deployment location in particular."

38.     USCENTCOM's decision to deny the waiver occurred without reviewing Mr. Taylor's medical records, without discussions with his treating medical providers, and without attempting to contact Mr. Taylor.

39.     Mr. Taylor was unaware of the collaboration between the Department of State and the Department of Defense concerning his medical clearance until he later received records pertaining to that collaboration through a Freedom of Information Act request.

40.     On September 13, 2018, Mr. Taylor was issued a Class 1 Unlimited Clearance for Worldwide Assignment from the Department of State.

41.     Department of State policy specifies that Class 1 Unlimited Clearance for Worldwide Assignment is issued to those with no identifiable medical issues limiting assignment abroad.

8

42.     Despite Mr. Taylor's Class 1 Unlimited Clearance for Worldwide Assignment, the Department of State informed him in approximately September 2018 that he was prohibited from working at the United States Embassy in Kabul, Afghanistan, because he is type 1 diabetic.

43.     The Department of State purported to cite the Department of Defense's medical clearance policy for civilian personnel working in Afghanistan as the basis for refusing to allow Mr. Taylor to work in Kabul, Afghanistan.

44.     Specifically, the Department of State claimed that Department of Defense policy, as set forth in paragraphs 34 and 35, prohibited type 1 diabetics from working in Afghanistan.

45.     In explaining the decision to deny Mr. Taylor's medical clearance, the Department of State wrote to Mr. Taylor that "managing patients on insulin is one of those specific concerns they [the Department of Defense] do not wish to have on their hands."

46.     In fact, Department of Defense policy does not prohibit type 1 diabetics from working in Afghanistan. The policy requires type 1 diabetics receive an individualized assessment in compliance with the Rehabilitation Act.

**E.      Defendants' denial of Mr. Taylor's appeals and waiver requests.**

47.     Mr. Taylor appealed the Department of State's decision not to allow him to work in Kabul, Afghanistan to the Bureau of Medical Services medical review board and requested to be heard on any concerns the review board had.

48.     On September 24, 2018, Mr. Taylor's appeal was summarily denied without the board contacting Mr. Taylor's health care providers or hearing from Mr. Taylor himself.

49.     The review board was an "ad hoc" committee which did not include any specialists focusing on the treatment of patients with type 1 diabetes.

50.     Mr. Taylor subsequently submitted a written request to discuss reasonable accommodations, to which the Department of State declined to respond.

51.     Under the Department of State Foreign Affairs Manual policy, Mr. Taylor's employing agency, the Department of Justice, retained the ability to make the final decision on whether he could work at the embassy in Kabul, Afghanistan.

52.     On September 27, 2018, the individuals responsible for administering the Rule of Law Program stated they still supported the deployment and would assist in obtaining a waiver to allow Mr. Taylor to work in Kabul, Afghanistan.

53.      On September 28, 2018, the Rule of Law Program confirmed they would pursue a waiver on Mr. Taylor's behalf.

54.     On October 19, 2018, the Rule of Law Program informed Mr. Taylor they had submitted the waiver request to the Human Resources Director for the Department of Justice.

55.     Despite this representation to Mr. Taylor, no waiver request was ever submitted by the Rule of Law Program on Mr. Taylor's behalf.

56.     On October 22, 2018, Mr. Taylor's participation in Foreign Affairs Counter Threat course (in preparation for him to go to Kabul, Afghanistan), scheduled for November 5, 2018, was cancelled by the Rule of Law Program.

57.     On October 25, 2018, Mr. Taylor was told by the Rule of Law Program not to contact the Human Resources Director directly, and that the Rule of Law Program would handle the waiver.

58.     On November 5, 2018, Mr. Taylor's direct contact at the Rule of Law Program stated that the Rule of Law Program would no longer support Mr. Taylor's appointment to the program, and the program withdrew the waiver request. This decision was made after an internal meeting within the Rule of Law Program.

59.     The Rule of Law Program did not contact Mr. Taylor's medical providers, nor did it hear directly from Mr. Taylor prior to making the decision to withdraw the waiver request.

60.     The Rule of Law Program stated they did not believe Mr. Taylor presented a risk of danger if permitted to work at the embassy in Kabul, Afghanistan. In fact, the individual responsible for processing Mr. Taylor's application to the Rule of Law Program stated that it "did not occur to ROL that [Mr. Taylor's] physical disability would prevent him from obtaining the required medical clearance."

61.     The Rule of Law Program informed Mr. Taylor that he could contact the Human Resources Director, Shawn Flinn, to request the approval directly.

62.     On November 19, 2018, Mr. Taylor submitted a waiver request to Human
Resources Director Shawn Flinn and Rebecca Mayer, Assistant General Counsel,
Executive Office for United States Attorneys.

63.     On December 7, 2018, Mr. Taylor sent a follow-up request to Mr. Flinn
and Ms. Mayer. Mr. Taylor provided further information and requested to "engage in a
discussion about potential accommodations."

64.     Mr. Flinn refused the request to meet or to discuss reasonable
accommodations with Mr. Taylor.

65.     On December 18, 2018, the Department of Justice denied Mr. Taylor's
request for a medical clearance waiver. Mr. Flinn wrote a letter to Mr. Taylor and stated
that the request was denied because the Department of Justice had other attorneys who
could fill the position. Mr. Flinn made this decision without consulting the Department
of Justice's Civil Rights Division – Disability Rights Section.

66.     The Department of Justice has attorneys detailed in over 50 countries
around the world but refused to discuss any substitute placements for Mr. Taylor.

67.     On February 11, 2019, after receiving the records of communications
between the Department of State and the Department of Defense, Mr. Taylor submitted
a waiver request to the Department of Defense.

68.     In his waiver request, Mr. Taylor asked that USCENTCOM undertake an
individualized assessment of his condition in compliance with Department of Defense
policy and the Rehabilitation Act, and to engage in the interactive process for purposes
of identifying a possible reasonable accommodation.

69.     Mr. Taylor's waiver request was handled and reviewed on behalf of USCENTCOM by the Department of the Air Force – Office of the Command Surgeon.

70.     In February 2019, USCENTCOM again refused to recommend approval for Mr. Taylor to work at the Embassy in Kabul. It also refused to engage in the interactive process for purposes of identifying a possible reasonable accommodation.

71.     USCENTCOM made this decision based on a generalized assessment, rather than undertaking an individualized analysis as required by the Rehabilitation Act and Department of Defense policy.

72.     As the basis for its denial, USCENTCOM stated that it could not "[a]ccommodat[e] this type of patient" – that is, an individual with type 1 diabetes – within its Area of Responsibility.

73.     In its denial, USCENTCOM further stated that, despite the stability of Mr. Taylor's condition, the "potential complications of your condition, should they arise, would greatly challenge our deployed health system."

**F.      Defendants' failure to individually assess Mr. Taylor's disability and to engage in the interactive process.**

74.     Neither the Department of State, the Department of Justice, the Department of Defense, nor the Department of the Air Force ever conducted an individualized assessment of Mr. Taylor as required by law. Rather, they based their denial of Mr. Taylor's medical clearance on invidious, categorical assessments of individuals with type 1 diabetes generally.

75.     Mr. Taylor has a history of excellent diabetes management, as acknowledged by the Department of State and the Department of Justice. Over the

course of nearly 30 years, Mr. Taylor has never experienced incapacitation or been hospitalized as a result of his type 1 diabetes.

76.     Mr. Taylor's direct supervisor wrote a letter of support affirming that Mr. Taylor's type 1 diabetes has never interfered with his work.

77.     Two medical providers approved Mr. Taylor's assignment to Kabul, Afghanistan using the criteria set out on Department of State Form DS-6561 and DS-6570.

78.     In addition, the United States Embassy compound in Kabul, Afghanistan is a secured facility with many of the comforts of living in the United States. Accommodations, services, and events include: movie theatre, swimming pools, four dining facilities, three restaurants, four stores, vending machines, WiFi internet, liquor store, bar, laundry and dry cleaning services, a fashion spa with massage services, softball leagues, basketball leagues, free cotton candy and popcorn, "pool parties," religious services, cooking classes, social events, and primary care medical services, *inter alia*.

79.     The Embassy in Kabul also has extensive resources and logistical capability as demonstrated by their ability to fly in "a 3-man team of bakers from Dubai's Sugerholic Bakery" to make 650 cupcakes and a 38" cake as part of a party that occurred at the embassy in July of 2019.

80.     Other employees at the Embassy, including type 2 diabetics, are permitted to bring medications with them to the Embassy.

81.     Neither the Department of State, the Department of Justice, the Department of Defense, nor the Department of the Air Force found that Mr. Taylor posed a direct threat of danger to himself or others.

82.     Nevertheless, Defendants never engaged in discussions about reasonable accommodations despite Mr. Taylor's specific written requests to do so. Nor did Defendants ever contact the medical providers who examined Mr. Taylor and signed off on his medical fitness to work in Kabul, Afghanistan.

83.     Management officials violated Department of Justice policy in failing to engage in an interactive process to determine reasonable accommodations.

84.     Management officials violated Department of State policy by failing to engage in an interactive process to determine reasonable accommodations.

85.     Management officials violated the Department of Defense's policy by failing to engage in an interactive process to determine reasonable accommodations.

86.     The Department of Justice, Department of State, Department of Defense, and Department of the Air Force, by refusing to provide medical clearance, medical clearance waivers, or engaging in the interactive process, all controlled Mr. Taylor's access to employment in the Rule of Law Program in Kabul, Afghanistan.

87.     The actions of the Department of Justice, Department of State, Department of Defense, and Department of the Air Force including refusing to allow Mr. Taylor to work in the Rule of Law Program in Kabul, Afghanistan and refusing to engage in an interactive process, were based on their imposition of an impermissible and invidious ban on him working Kabul because of his Type 1 diabetes.

88.     Defendants' discriminatory actions have resulted in lost income and lost professional opportunities for Mr. Taylor.

89.     Defendants' discriminatory actions have caused Mr. Taylor significant emotional distress, professional embarrassment, and damage to his reputation and career.

## V.     EXHAUSTION OF ADMINISTRATIVE REMEDIES.

90.     Mr. Taylor exhausted his administrative remedies by filing a written complaint with the Department of State Office of Civil Rights on September 13, 2018.

91.     Mr. Taylor received a final Report of Investigation from the Department of State that was dated August 7, 2019.

92.     Mr. Taylor exhausted his administrative remedies by filing a written complaint with the Department of Justice Office of Civil Rights on January 3, 2019, and more than 180 days have passed.

93.     Mr. Taylor received a final Report of Investigation from the Department of Justice that was dated August 6, 2019.

94.     Mr. Taylor has exhausted his administrative remedies by filing a written complaint with the Department of Defense Diversity Management Operations Center on April 8, 2019, and more than 180 days have passed.

95.     Mr. Taylor received a final Report of Investigation from the Department of Defense that was dated September 13, 2019.

96.     On March 28 and April 15, 2019, Mr. Taylor received notice authorizing him to pursue a civil action against the Secretary of the Air Force, in her official capacity.

## COUNT I
### (Rehabilitation Act)

97.     Plaintiff re-alleges and incorporates by reference the foregoing paragraphs.

98.     By their conduct above, Defendants have violated the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, and its implementing regulations, which mandate that federal agency employers, such as Defendants, not discriminate against qualified individuals and applicants on the basis of disability in employment practices.

99.     During all relevant times, Mr. Taylor was qualified for the Senior Legal Advisor position with the Rule of Law Program and was medically fit to work at the embassy in Kabul, Afghanistan because he could perform the essential functions of the job with or without reasonable accommodations.

100.    Defendants failed to conduct an individualized assessment of Mr. Taylor's condition as required by law.

101.    Mr. Taylor made written requests to engage in a discussion about reasonable accommodations, but Defendants refused to speak with Mr. Taylor regarding potential accommodations.

102.    Defendants acknowledged Mr. Taylor does not pose a direct threat but still refused to allow him to work as Senior Legal Advisor with the Rule of Law

Program in Kabul, Afghanistan and refused to approve his medical clearance to work at the Embassy.

103.   Defendants acted in bad faith by failing to engage in interactive discussions with Mr. Taylor despite numerous requests by Mr. Taylor to do so.

104.   Defendants controlled Mr. Taylor's access to the Rule of Law Program, in particular with regards to his ability to obtain medical clearance and denied him access to that program based on invidious, categorical determinations concerning his disability status generally.

105.   As a result of Defendants' discriminatory conduct, Mr. Taylor has suffered and continues to suffer damages.

106.   The actions of Defendants, as set forth above, constitute a violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*

### PRAYER FOR RELIEF

107.   Plaintiff requests the following relief:

a.   Grant judgment in favor of the Plaintiff and declare that Defendants have violated the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and its accompanying regulations;

b.   Order reinstatement of Plaintiff in the position of Senior Legal Advisor position with the Rule of Law Program in Kabul, Afghanistan;

c.   Order Defendants to pay back pay, front pay, retirement and related benefits, and other benefits and to take other appropriate nondiscriminatory measures to overcome the effects of the discrimination;

d.      Award Plaintiff compensatory damages for, *inter alia*, the damage to his career and reputation, lost professional opportunities, and pain and suffering he has experienced as a result of Defendants' failure to comply with the requirements of the Rehabilitation Act;

e.      Order Defendants to further train staff regarding the Rehabilitation Act's individualized assessment and reasonable accommodation requirements;

f.      Award Plaintiff attorney's fees and costs for the prosecution of this action; and

g.      Order such other appropriate relief as the interests of justice require.

## JURY DEMAND

108.    Plaintiff demands a trial by jury on all of his claims.

Respectfully submitted,
WILLIAM TAYLOR,

By his attorneys,

*Daniel K. Gebhardt*
Daniel K. Gebhardt
(D.C. Bar No. 975703)
SOLOMON LAW FIRM, PLLC
1025 Connecticut Avenue, N.W., Suite 1000
Washington, DC 20036
Tel.     866-833-3529
Fax.    202-688-1896
dgebhardt@fedemploylaw.com


  /s/ Hillary Schwab
Hillary Schwab, BBO #666029
Brant Casavant, BBO #672614
FAIR WORK P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel.     (617) 607-3261
Fax.    (617) 488-2261
hillary@fairworklaw.com
brant@fairworklaw.com

Attorneys for Plaintiff
Admitted *pro hac vice*.

**Dated:** January 10, 2020.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing document was filed through the CM/ECF system and will be served on all registered participants, and that a true copy of this document was sent by first-class mail on all non-registered participants.

**Dated:** January 10, 2020.                        /s/ Hillary Schwab
                                                                Hillary Schwab